IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARCHELLE SMITH <br> 1165 Som Center Drive, Apt. 212 <br> Mayfield Heights, Ohio, 44124 <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSITY HOSPITALS HEALTH SYSTEM, INC., <br> 11100 Euclid Avenue <br> Cleveland, Ohio 44106 <br><br> **Serve also:** <br> ACFB, Statutory Agent <br> 127 Public Square, Suite 4900 <br> Cleveland, OH 44114 <br><br> -and- <br><br> DIANE TUB <br> 11100 Euclid Avenue <br> Cleveland, Ohio 44106 <br><br> Defendants. | CASE NO.: <br><br> JUDGE: <br><br> (Jury Demand Endorsed Herein) |

Plaintiff Marchelle Smith, by and through undersigned counsel, as her Complaint against Defendants, states and avers the following:

## **PARTIES.**

1. Smith is an individual residing in Cuyahoga County, Ohio.

2. University Hospital Health Systems, Inc. ("UH") is a domestic non-profit corporation with its principal place of business located in Cuyahoga County, Ohio.

3. Upon information and belief, Tub is a resident of Cuyahoga County, Ohio.

## PERSONAL JURISDICTION.

4. UH is an Ohio Corporation; hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over UH comports with due process.

5. Tub is an Ohio Resident who contracts with companies in Ohio, votes in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

6. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE.

7. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Rhode's state law claims under the Ohio Constitution and Ohio R.C. § 4111.14, *et seq* because those claims derive from a common nucleus of operative facts.

9. Venue is proper in this District because Defendants does a sizeable portion of its business in this District; its principal place of business is located in this district; and many of the wrongs herein alleged occurred and/or were based on compensation decisions that were made in this District.

## FLSA COVERAGE.

10. At all times referenced herein, UH formed an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or

materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

11. At all times referenced herein, UH was a "named enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r)(2)(A), in that said enterprise at all times hereinafter mentioned was "an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution."

12. At all times referenced herein, Tub exercised control over how Smith's hours of work were reported to UH, as stated herein, and took actions that resulted in Smith not being paid properly for all hours worked.

## FACTUAL ALLEGATIONS.

13. Smith is a former employee of UH.

14. Smith worked for UH as a Medical Assistant.

15. Smith began her employment with UH in February of 2021.

16. At all times referenced herein, Smith was paid hourly.

17. At all times referenced herein, Smith was receiving Social Security benefits and was limited in the amount of money she could earn before her benefits would be diminished and/or endangered.

18. Initially, Smith worked part-time, averaging 20 hours a week.

19. At all times referenced herein, Smith was supervised by Tub.

20. As Smith became more proficient in her job, Tub began to schedule Smith to work more hours.

21. In or around the summer of 2021, Smith expressed concern about being scheduled more hours to Tub.

22. Smith told Tub that she could not work more than 20 hours before she would begin to earn too much to preserve her Social Security Benefits.

23. Tub responded to Smith's concerns about her increasing hours by telling her to "just clock out" and then stay until her tasks were all completed.

24. Tub told Smith that she would go back and edit Smith's hours if she forgot to clock out.

25. Tub told Smith that UH would consider her off-the-clock work to be "volunteer work."

26. Subsequently, Smith began to work forty (40) or more hours per week, but she was only scheduled and paid for 20-25 hours per week because she clocked out early and/or after Tub made "adjustments" to her time records.

27. Upon information and belief, Tub thought she was doing Smith a favor.

28. In reality, Defendants actions resulted in Smith being paid a subminimum wage and occasionally denied overtime pay.

29. In or November of 2021, Smith complained to Tub that she did not want to continue working off the clock for no pay.

30. Smith told Tub that she wanted to be able to leave when her scheduled shift ended.

31. Tub responded to Smith by telling her that UH was trying to get more help, and that she would talk to her manager, Andrea Clark, about Smith's concerns.

32. Subsequently, Tub continued to require Smith to work past the end of her scheduled shift.

33. On several occasions, Smith asked Tub if she could leave for the day when her shift ended, or sometime shortly thereafter, and was told "no."

34. At all times referenced herein, Defendants knew that Smith had worked more hours than she was being paid for.

35. Tub knew that Smith was regularly working off the clock and directed and encouraged her to do so because Tub's department was short-staffed.

36. Tub did not accidentally edit Smith's reported hours of work downward; Tub's actions were intentional, knowing, and willful.

37. Tub did not reduce Smith's reported hours of work with a good faith belief that doing so was in conformity with the minimum wage and overtime requirements of the FLSA.

38. Smith resigned her employment with UH on or about November 25, 2022.

39. As a result of Defendants' wrongful conduct, Smith has suffered damages.

### COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT.

40. Smith re-alleges and incorporates by reference the allegations set forth in paragraphs 1- 39, above.

41. The FLSA requires each covered employer, such as UH, to pay all non-exempt, hourly employees a regular rate of at least the minimum wage for all hours worked.

42. The FLSA requires each covered employer, such as UH, to pay all non-exempt, hourly employees an overtime premium for all hours worked over forty (40) in a single workweek.

43. Through Tubs conduct, Defendants knowingly, willfully, and intentionally Smith of wages totaling at least the minimum wage for all hours worked and overtime wages to which she was entitled.

44. Smith is entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

### COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGES STANDARDS ACT.

45. Smith re-alleges and incorporates by reference the allegations set forth in paragraphs 1- 35, above.

46. In 2022, the OMFWSA required employers to pay a minimum wage of at least $9.30 per hour to all non-exempt employees.

47. In 2022, UH failed to pay Smith $9.30 or greater per hour for all hours worked.

48. In denying compensation at the requisite Ohio minimum wage rate, OH violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

49. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

50. By failing to pay Smith overtime when she worked more than forty (40) hours in a workweek, Defendants violated Ohio R.C. § 4111.03.

51. As a direct and proximate result of Defendants' unlawful conduct, Smith has suffered and will continue to suffer a loss of income and other damages.

52. Having violated the OMFWSA, UH is liable to Smith for the full amount of her unpaid overtime wages and for costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF.

WHEREFORE, Plaintiff Marchelle Smith requests judgment in her favor against Defendants, containing the following relief:

(a) Awarding Smith unpaid minimum wages and overtime wages;

(b) Awarding Smith liquidated damages pursuant to 29 U.S.C. § 216(b);

(c) Awarding pre-judgment and post-judgment interest as provided by law;

(d) Awarding reasonable attorneys' fees and costs; and

(e) Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

*/s/Chris P. Wido*
Chris Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**
25825 Science Park Drive, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: Chris.Wido@Spitzlawfirm.com

*Attorney for Plaintiff Marchelle Smith*

## **JURY DEMAND**

Plaintiff Marchelle Smith demand a trial by jury by the maximum number of jurors permitted.

*/s/Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**